UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

YANHONG CHEN and LUTONG YANG,
on behalf of themselves
and others similarly situated,

    Plaintiffs,

v.                            Case No. 8:23-cv-1602-VMC-UAM

WOW RESTAURANT TH, LLC,
and TRINH HUYNH,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Wow Restaurant TH, LLC, and Trinh Huynh's Motion to Dismiss (Doc. # 29), filed on October 10, 2023. Plaintiffs Yanhong Chen and Lutong Yang responded on October 31, 2023. (Doc. # 30). For the reasons that follow, the Motion is denied.

**I.  Background**

Plaintiffs initiated this 26 U.S.C. § 7434 action on July 17, 2023, asserting civil tax fraud against their former employers. (Doc. # 1). After the Court granted Defendant's Motion to Dismiss (Doc. # 22), Plaintiffs filed an amended complaint on October 5, 2023. (Doc. # 26).

1

Plaintiffs worked at Wow Restaurant TH, LLC ("Wow"), which does business as Yaki Sushi Grill BBQ, between 2019 and 2022. (Id. at ¶¶ 7-8). At various times, Chen worked as a waitress, kitchen helper, hostess, and cashier. (Id. at ¶ 7). Yang worked on the renovation of the restaurant in 2019-2020 and as a sushi chef in 2020-2022. (Id. at ¶ 8).

Huynh was "the day-to-day, on-site, hands-on manager of Yaki Sushi Grill BBQ, who hired Plaintiffs and other employees, supervised Plaintiffs and other employees, gave Plaintiffs and other employees their assignments and changed Chen's assignments from time to time, determined Plaintiffs' and other employees' schedules, determined Plaintiffs' and other employees' salaries, prepared and kept records of the employee payroll, and sent the employee payroll to an accountant." (Id. at ¶ 21). Huynh is "the sole member, manager, and financial controller of Wow who dominated and controlled Wow." (Id. at ¶¶ 2, 19).

Wow also made several loans to Huynh. "According to its 2020, 2021, and 2022 Form 1120-S Schedule Ls, Wow loaned a total of $27,938.00 to Huynh in 2020[,] $192,438.00 in 2021, and $146,809.00 in 2022." (Id. at ¶ 22). Allegedly, Huynh also "used company credit cards for personal expenses, including to make payments towards a home equity loan, to

make payments towards leases of automobiles she put to personal use, and to purchase food and drinks for herself from Starbucks and McDonalds." (Id. at ¶ 23).

Plaintiffs allege that, "[i]n about August 2020, Huynh told Plaintiffs that she needed them to accept . . . W-2s because all of Wow's employees were working off the books and being paid under the table in cash, and that she needed some on-the-books employees in order to apply for government grants and/or loans." (Id. at ¶ 25). Allegedly, Huynh transmitted false records of payments to Chen and Yang to accountants to prepare information returns, including "Form W-2s, Form 1120-S's, quarterly Forms 941, and Form 940s." (Id. at ¶ 29).

Chen was required to accept W-2s that overstated her income for 2020, 2021, and 2022. Her 2020 income was reported as $29,147.90 in wages and $1,851.00 in tips. (Id. at ¶ 24(a)(i)). Her 2021 income was reported as $45,226.15 in wages and $1,397.37 in tips. (Id. at ¶ 24(a)(ii)). Her 2022 income was reported as $9,500.00 in wages. (Id. at ¶ 24(a)(iii)). These values far exceeded Chen's actual compensation for these years. Chen was paid "between $6,000.00 and $10,000.00 in wages throughout the entirety of her employment," and was provided "lodging in a company dormitory valued at about

$250.00 per month, for 21 months (amounting to about $5,250.00)." (Id. at ¶ 13).

Yang was similarly required to accept W-2s that overstated his income from 2020 to 2022. Yang's 2020 income was reported as $32,000, his 2021 income was reported as $75,000, and his 2022 income was reported as $21,500. (Id. at ¶ 24(b)(i)-(iii)). However, in reality, Yang was paid no wages during his employment, though he was provided "lodging in a company dormitory valued at about $250.00 per month, for 34 months (amounting to about $8,500.00)." (Id. at ¶ 14).

According to the amended complaint, Wow "willfully filed fraudulent tax information forms with the [IRS]." (Id. at ¶¶ 1, 104).

"Wow's 2020[, 2021, and 2022] Forms 1120-S, 940, and 941s, as well as Chen's [and Yang's] W-2[s], were all information returns filed with the IRS that contained false and fraudulent information about Chen's [and Yang's] compensation." (Id. at ¶¶ 43, 51, 58, 68, 77, 84). Chen and Yang allege that the reporting of higher income between 2020 and 2022 subjected them to increased federal income tax, Social Security payroll tax, and Medicare payroll tax. (Id. at ¶¶ 44, 52, 59, 70, 78, 85). Plaintiffs have provided

4

redacted copies of Chen's and Yang's respective 2020, 2021, and 2022 W-2 Forms. (Doc. # 1-1; Doc. # 1-2).

Now, Defendants move to dismiss the amended complaint. (Doc. # 29). Plaintiffs have responded (Doc. # 30), and the Motion is ripe for review.

## II. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its

5

consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

Rule 9(b) of the Federal Rules of Civil Procedure imposes more stringent pleading requirements on fraud claims. Clausen v. Lab'y Corp. of Am., Inc., 290 F.3d 1301, 1305 (11th Cir. 2002). The complaint must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1324 (11th Cir. 2009) (citation and internal quotation marks omitted). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III. **Analysis**

As mentioned previously, Plaintiffs assert a claim under Section 7434(a) against Defendants. (Doc. # 26 at 25–26). "Section 7434(a) provides a cause of action against a 'person [who] willfully files a fraudulent information return with respect to payments purported to be made to any other person,' and Section 7434(b) permits damages for the greater of $5,000 or actual damages." Tran v. Tran, 239 F. Supp. 3d 1296, 1296–

97 (M.D. Fla. 2017) (quoting 26 U.S.C. § 7434(a)). "To state a claim under 26 U.S.C. § 7434, a plaintiff must allege: (1) defendant issued an information return; (2) the information return was fraudulent; and (3) [d]efendant willfully issued such a fraudulent return." Elliott v. Barbeque Integrated, Inc., No. 19-62426-CIV-SINGHAL, 2020 WL 3451576, at *2 (S.D. Fla. May 29, 2020) (quoting 26 U.S.C. § 7434(a)). "[T]o state a claim for civil tax fraud under § 7434(a), the plaintiff must allege that the defendant willfully filed information returns that misrepresent the *amount of payments made*." Sokoloff v. Bio World Merch., Inc., No. 3:22-CV-12 (CDL), 2022 WL 16857008, at *3 (M.D. Ga. Nov. 10, 2022).

Defendants raise multiple arguments for dismissal. The Court will address each argument in turn.

**A.  Grouping of Corporate and Individual Defendants**

First, Defendants argue that Plaintiffs have impermissibly "merge[d] the individual and corporate defendants by incorporating all the general allegations into Count I and [by combining] the prayer of relief [for Defendants], without differentiating each defendant's liability based on the distinct factual pattern." (Doc. # 29 at 3).

A plaintiff fails to comply with the pleading standards in Federal Rule of Civil Procedure 8 if "the complaint indiscriminately groups the defendants together." Joseph v. Bernstein, 612 F. App'x 551, 555 (11th Cir. 2015). This Court previously dismissed Plaintiffs' complaint on this ground, among others. (Doc. # 22).

However, in the amended complaint, Plaintiffs have corrected this deficiency. While Plaintiffs reallege and incorporate by reference all factual allegations in Count I (Doc. # 26 at ¶ 102), Plaintiffs no longer refer to Defendants together. Instead, Plaintiffs allege that "Wow willfully filed fraudulent information returns with respect to payments purported to be made to Plaintiffs and the [Internal Revenue Code (IRC)] Class" and that this violation of Section 7434 entitles Plaintiffs and the IRC Class to damages and attorney's fees and costs. (Id. at ¶¶ 104, 105). Plaintiffs then state that Hunyh should be held liable for this conduct because of her control over Wow, abuse of the corporate form, and other actions, as alleged previously in the amended complaint. (Id. at ¶ 106). Therefore, Plaintiffs do not impermissibly lump Defendants together and Defendants have received sufficient notice of the allegations and theory of liability against them.

### B. Claim against Huynh

Next, Defendants argue that the claim against Huynh should be dismissed because Plaintiffs have not sufficiently pled that the corporate veil should be pierced. "Under Florida law, the corporate veil will only be pierced to prevent fraud or injustice." Eckhardt v. United States, 463 F. App'x 852, 855 (11th Cir. 2012) (citing Dania Jai-Alai Palace, Inc. v. Sykes, 450 So. 2d 1114, 1121 (Fla 1984)). Use of this theory of liability is proper if "the corporation 'is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose.'" Id. (quoting Aztec Motel, Inc. v. Faircloth, 251 So. 2d 849, 852 (Fla. 1971)). To pierce the corporate veil, the plaintiff must prove that:

> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

9

Molinos Valle Del Cibao, C. por A. v. Lama, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting Gasparini v. Pordomingo, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)) (emphasis omitted).

Determining whether a shareholder is a corporation's alter ego is a fact-specific analysis. Eckhardt, 463 F. App'x at 856. "One important factor relevant to whether an individual dominates the corporation to such an extent as to negate its separate identity is whether corporate funds were used for the individual's benefit." Id.

However, "[m]ere ownership of a corporation by one shareholder is insufficient to pierce the corporate veil." Id. (citing Gasparini, 972 So. 2d at 1055). Instead, a plaintiff must also show that "the corporation [was] formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil." Id. (quoting Sykes, 450 So. 2d at 1121). "Improper conduct exists where a corporation is used 'as a subterfuge to mislead or defraud creditors, to hide assets, to evade the requirements of a statute or some analogous betrayal of trust.'" Id. (quoting Lipsig v. Ramlawi, 760 So. 2d 170, 187 (Fla. 3d DCA 2000)).

In the amended complaint, Plaintiffs have alleged sufficient facts to maintain their claim against Hunyh. First, Plaintiffs have provided facts suggesting that Huynh

10

was the alter ego of Wow. Among other allegations, Plaintiffs allege that Wow loaned Huynh $367,185.00 between 2020 and 2022. (Doc. # 26 at ¶ 22). Additionally, Plaintiffs allege that Huynh "used company credit cards for personal expenses, including to make payments towards a home equity loan, to make payments towards leases of automobiles she put to personal use, and to purchase food and drinks for herself from Starbucks and McDonalds." (Id. at ¶ 23).

Second, Plaintiffs have pled that Wow was used for improper conduct. Specifically, Plaintiffs assert that Wow violated Section 7434 by improperly reporting Plaintiffs' income to the IRS so that Wow could apply for government grants and loans. (Id. at ¶¶ 1, 25-26, 104-06). They further allege that this violation caused Plaintiffs financial harm by requiring them to pay higher income taxes and payroll taxes. (Id. at ¶¶ 44, 52, 59, 70, 78, 86). While Defendants argue that Huynh's use of Wow's funds for personal expenses and Wow's loans to Huynh were legitimate such that they should not justify piercing the corporate veil (Doc. # 29 at 5), Plaintiffs have provided sufficient information at this stage of the litigation.

Defendants further argue that the claim against Huynh should be dismissed because she "was not the filer of the

11

alleged tax return." (Id. at 9); see 26 U.S.C. § 7434(a) (creating a civil action against "the person so filing such [fraudulent] return"). Rather, it was Wow who, as Plaintiffs' employer, issued Plaintiffs' W-2s. According to Defendants, "Plaintiffs' attempt to pierce [the] corporate veil is futile here as they did not allege any facts that [Huynh] was the issuer of the W-2." (Doc. # 29 at 6).

However, the fact that Huynh did not issue the W-2s does not preclude Plaintiffs from seeking to hold Huynh liable for Wow's violation of Section 7434 by piercing the corporate veil. To succeed under this theory, Plaintiffs need not show that Huynh issued the W-2s, but only that she should be held liable for Wow's issuing of the W-2s that indicated incorrect wages. See Tara Prods., Inc. v. Hollywood Gadgets, Inc., No. 09-CV-61436, 2010 WL 1531489, at *9 (S.D. Fla. Apr. 16, 2010) ("Alter ego is not a separate cause of action for which relief can be granted; rather, in this case, alter ego serves as a theory to impose liability on an individual for the acts of a corporate entity.").

C. **Particularity and Scienter**

Next, Defendants contend that the amended complaint fails to plead its claim with particularity under Rule 9(b). (Doc. # 29 at 7-8). Additionally, they argue that

12

"Plaintiff[s] failed to plead any specific facts with regards to the scienter of Defendants." (Id. at 8).

"Rule 9(b)'s heightened pleading standard applies to [Plaintiffs'] tax-fraud claim [under Section 7434(a)]." Vandenheede v. Vecchio, 541 F. App'x 577, 579 (6th Cir. 2013). The Court finds, however, that Plaintiffs have sufficiently pled all elements of their claim. Importantly, Plaintiffs have pleaded the "who, what, when, why [and] how surrounding the actual filing of the returns," see Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1298 (S.D. Fla. 2014), by outlining the false information returns at issue, the years in which they were issued, how the returns were incorrect, and why Defendants issued the false returns. See Diaz v. In Season Distribs., LLC, No. 1:16-cv-21877-UU, 2016 U.S. Dist. LEXIS 111704, at *4-5 (S.D. Fla. Aug. 17, 2016) (denying a motion to dismiss a claim under Section 7434 where Plaintiff's pleadings defined the information returns at issue, how the returns were incorrect, and Defendants' improper purpose for filing false returns).

Regarding scienter, Section 7434(a) requires a willful filing of a fraudulent information return. "[W]illfulness in this context 'connotes a voluntary, intentional violation of a legal duty.'" Vandenheede, 541 F. App'x at 580 (citation

13

omitted). "Tax fraud typically requires 'intentional wrongdoing.'" Id.; see Tran, 239 F. Supp. 3d at 1298 ("To prove willfulness, the plaintiff must show that the defendants, aware of the duty purportedly imposed by Section 7434, specifically intended to flout the statute."). "At the motion to dismiss stage, then, the complaint must contain specific allegations supporting a plausible inference that [Defendants] willfully filed false information returns." Vandenheede, 541 F. App'x at 580.

Here, Plaintiffs have pled that "Wow willfully filed fraudulent tax information forms with the Internal Revenue Service." (Doc. # 26 at ¶¶ 1, 104). Plaintiffs further allege that "Huynh is liable inasmuch as she completely dominated Wow; abused the corporate form fraudulently to deceive government and private creditors into giving Wow money by falsely representing on information returns filed with the IRS that it paid employees, including Plaintiffs, money it did not pay; and caused Plaintiffs financial harm by doing so inasmuch as they were overtaxed on income they were not actually paid." (Id. at ¶ 106). Additionally, Plaintiffs outline specific allegations that Huynh knew that she was filing incorrect W-2s. The amended complaint states that "[i]n about August 2020, Huynh told Plaintiffs that she needed

14

them to accept these W-2s because all of Wow's employees were working off the books and being paid under the table in cash, and that she needed some on-the-books employees in order to apply for government grants and/or loans." (Id. at ¶ 25). As Huynh controls Wow (Id. at ¶ 2), her actions can be used to show that Wow had the requisite scienter.

In short, even applying Rule 9(b), Plaintiffs have sufficiently pled that Defendants did knowingly file fraudulent W-2 forms.

### D. **Filing of W-2 Forms**

Finally, Defendants argue that "Plaintiffs fail[ed] to state a claim for relief because the 'W-2' forms alleged in the Complaint are not 'information returns' as described in the statute and in any event are not 'filed' with the IRS." (Doc. # 29 at 10).

This argument fails. The amended complaint clearly alleges that W-2 forms are "information returns" that were filed with the IRS. (Doc. # 26 at ¶¶ 15, 29). And the relevant statutes support that W-2 forms qualify as "information returns" for purposes of Section 7434(a). See 26 U.S.C. § 7434(f) (defining "information return" as "any statement described in section 6724(d)(1)(A)"); Id. § 6724(d)(1)(A)(vii) (defining information returns to include

15

"any statement of the amount of payments to another person . . . relating to information returns with respect to income tax withheld"). Claims under Section 7434 for improper reporting of income in W-2 forms have been recognized by many courts. E.g., Caraballo v. Double L Enters., LLC, No. 8:15-cv-2123-JDW-AEP, 2016 WL 1084809, at *3 (M.D. Fla. Feb. 25, 2016) (determining that Plaintiff's allegations of Defendant's "willful failure to properly record, account for, and report to the IRS on Caraballo's W-2 Forms all of the monies paid to [Plaintiff] during his employment . . . established a substantive, sufficient basis for . . . damages under 26 U.S.C. § 7434(b)"), report and recommendation adopted, 8:15-cv-2123-JDW-AEP, 2016 WL 1108977 (M.D. Fla. Mar. 18, 2016); Cuellar-Aguilar v. Deggeller Attractions, Inc., 812 F.3d 614, 620 (8th Cir. 2015) (reversing a district court's dismissal of a claim under Section 7434 when Plaintiffs had alleged underreporting of income on W-2 forms "to reduce the business's tax obligations under" two federal laws); Elliott, 2020 U.S. Dist. LEXIS 95687, at *4 ("[T]he parties must concede that the W-2 forms are information returns.").

While Defendants also dispute that the W-2s were filed with the IRS (Doc. # 29 at 12), when deciding a motion to

16

dismiss, the Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson, 372 F.3d at 1262. As Plaintiffs specifically alleged that the W-2 forms were filed with the IRS (Doc. # 26 at 1), Defendants' argument fails.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendants Wow Restaurant TH, LLC, and Trinh Huynh's Motion to Dismiss (Doc. # 29) is **DENIED**. Defendants are directed to file their answer to the amended complaint within 14 days of the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 6th day of May, 2024.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

17